Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 736 & 01 C 5825 | **DATE** | 9/29/2003 |
| **CASE TITLE** | SUNSTAR, INC. vs. ALBERTO-CULVER CO., INC., et al<br>ALBERTO-CULVER CO., INC. v. SUNSTAR, INC., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Court denies Movants' Motion for Determination of Japanese Law [61-1] and grants in part and denies in part Movants' Motion for Determination of Responsive Expert Report Dates and Exclusion of Law Expert Testimony from Trial [62-1]. Status hearing set for 10/22/03 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 30 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | 139 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CG | courtroom deputy's initials | 2003 SEP 30 PM 12:10 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SUNSTAR, INC., <br><br> Plaintiff, <br><br> v. <br><br> ALBERTO-CULVER COMPANY, INC. <br> and BANK ONE CORPORATION f/k/a FIRST <br> NATIONAL BANK OF CHICAGO, <br><br> Defendants. | Civil Action No. 01 C 0736 <br><br> Judge Guzman |

- and -

| | |
|---|---|
| ALBERTO-CULVER COMPANY, a Delaware <br> Corporation, <br><br> Plaintiff, <br><br> v. <br><br> SUNSTAR, INC., a Japanese corporation, SUNSTAR <br> GROUP COMPANY (f/k/a Alberto-Sunstar Co., Ltd.), a <br> Japanese corporation, KANEDA, KASAN, KABUSHIKI <br> KAISHA, a Japanese corporation, and BANK ONE, <br> NATIONAL ASSOCIATION, as Trustee under Trust <br> Agreement No. 22-81196, dated February 27, 1980, a <br> national banking association, <br><br> Defendants. | Civil Action No. 01 C 5825 <br><br> Judge Guzman |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Alberto-Culver Company's ("Alberto") and Bank One, National Association's ("Bank One") Motion for Determination of Japanese Law and Motion for Determination of Responsive Expert Report Dates and Exclusion of Law Expert Testimony from

1

Trial. For the following reasons, the Court denies Movants' Motion for Determination of Japanese Law and grants in part and denies in part Movants' Motion for Determination of Responsive Expert Report Dates and Exclusion of Law Expert Testimony from Trial.

## BACKGROUND

In February 1980, Sunstar, Inc. ("Sunstar"), Alberto, and Bank One entered into various agreements regarding the sale of Japanese VO5 trademarks (the "1980 Agreements"). Specifically, Alberto sold and assigned certain Japanese VO5 trademark registrations (the "Licensed Trademarks") to Sunstar, to be held in trust by Bank One as Trustee for Sunstar's benefit for 99 years. Concurrently, the Trustee granted Sunstar a 99-year exclusive Japanese trademark license for the Licensed Trademarks in Japan (the "License Agreement"). After the 99-year term of the license was over, Sunstar would assume full legal title to the Licensed Trademarks. In 1999, however, a dispute developed between the parties regarding whether a particular mark that Sunstar was using in Japan, which mark was not identified in the 1980 Agreements (the "1999 Mark"), was or was not within the scope of Sunstar's rights under the License Agreement. That dispute gives rise to the instant litigation.

Alberto and Bank One contend that the License Agreement granted Sunstar the right to use only the specifically Licensed Trademarks identified in the License Agreement. Sunstar does not dispute that the 1999 Mark is not one of those Licensed Trademarks. Instead, Sunstar argues that the scope of the rights granted by the License Agreement is broadened by Japanese trademark law to include marks that neither were listed in the License Agreement nor even existed at the time the parties entered into the 1980 Agreements.

It is undisputed that, under Illinois law, the plain English language of the License Agreement, leaving out the term *sensi-shiyoken* means that Sunstar can use only the trademarks

2

specified in the license. But, it is not the plain English language of the contact that causes the parties' disagreement. It is the inclusion of one Japanese term – *senyo-shiyoken* – as a parenthetical in the License Agreement that has spurred years of contentious debate between the parties. The term *senyo-shiyoken* appears only once in the License Agreement as follows:

> LICENSOR agrees to cause said exclusive license (Senyo-Shiyoken) to be registered at the Japanese Patent Office at the cost and expense of LICENSEE.

(License Agmt., para. I, at 2.)[1]

It is undisputed that *senyo-shiyoken* is the Japanese term for an exclusive license registered with the Japanese Patent Office ("JPO"). The parties disagree, however, as to what rights are inherent to such registration. Alberto and Bank One claim that any rights in the Licensed Trademark conveyed to Sunstar are governed by the License Agreement only and are limited to exclusive use of specific, registered marks. Sunstar argues that registration of a license as *senyo-shiyoken* with the JPO expands a licensee's rights to include the full range of use rights normally possessed by the owner of a registered trademark under Japanese law. By their recent motions, Alberto and Bank One ask this Court to determine the meaning of the term *senyo-shiyoken* as a matter of law.

---

[1] The term *senyo-shiyoken* also appears in similar context in the Basic Sale Agreement:

> [Sunstar] shall be solely responsible, at its own cost and expense, for registering the exclusive license (Senyo-Shiyoken) under the License Agreement with the Patent Office in Japan during the term of the Trust.

(Basic Sale Agmt. § 6.1, at 6) and in the Trust Agreement:

> [Sunstar] shall be solely responsible, at its own cost and expense, for registering the exclusive license (Senyo-Shiyoken) under the License Agreement with the Patent Office in Japan during the term of this Agreement. . . . Trustee shall execute and deposit in the Account with the Bank all such documents as reasonably requested of Trustee by AS in connection with the registrations of the assignment of the Trademark from [Sunstar] to Trustee and of [Sunstar's] exclusive license (Senyo-Shiyoken) under the License Agreement.

(Trust Agmt., para. 2, at 3), which agreements along with the License Agreement form the 1980 Agreements at issue in the instant dispute.

3

This is not the first time this Court has been asked to determine this issue. When confronted with this very issue in considering the parties' motions for summary judgment, Judge Lindberg ruled: (1) "Illinois law controls the basic contractual interpretation of the 1980 Agreements"; (2) the term "*senyo-shiyoken* is in the License Agreement for a reason"; (3) "a question of fact . . . exists as to what the parties intended in the License Agreement – whether the full range of use-rights inherent in the listed trademark registrations were licensed to Sunstar, or the specific marks only"; and (4) "a question of fact still exists as to whether the 1999 Mark falls within the range of marks defined by Japanese trademark law as being encompassed within the use-rights under those registrations." Summ. J. Order (Nov. 6, 2002), at 10 ("Nov. 6, 2002 Order").

As much as the Court would like to put this issue to rest once and for all, the Court declines Movants' request to define the term *senyo-shiyoken* as a matter of law (*see infra*).

## DISCUSSION

The motions pending before this Court require resolution of the following issues: (1) whether, as a matter of law, this Court must determine what rights, if any, registration of an exclusive license as a *senyo-shiyoken* with the JPO gives the licensee beyond those stated in the License Agreement; (2) whether the Court will allow Japanese trademark law experts to testify to the jury; and (3) whether the Court will allow Alberto and Bank One to file responsive non-legal expert reports and setting dates for Movants to file responsive expert reports.

I.    **Motion for Determination of Japanese Law**

In their Motion for Determination of Japanese Law Movants purportedly request this Court to determine what a *senyo-shiyoken* license is under Japanese trademark law and what rights, if any, registration of an exclusive license as a *senyo-shiyoken* with the JPO gives the licensee beyond those stated in the License Agreement. We declines to do so. Instead, we conclude that the pivotal question is not what Japanese law provides for, but rather what rights in the Licensed Trademarks Alberto intended to convey to Sunstar by inclusion of the term *senyo-shiyoken* in the License Agreement. We hold that, because the term *senyo-shiyoken* renders the License Agreement ambiguous and that theparties' intent at the time they entered into the License Agreement is a crucial question of fact to be determined by the jury at trial.

It is well-established under Illinois law that a contract must be interpreted to give effect to all terms of the contract. *LaSalle Nat'l Trust, N.A., U/T 116555 v. ECM Motor Co.*, 76 F.3d 140, 144 (7th Cir. 1995) (interpreting Illinois law); *see Ill. State Toll Highway Auth. v. Gust K. Newberg, Inc.*, 531 N.E.2d 982, 987 (Ill. App. Ct. 1988), *appeal denied* 537 N.E.2d 809 (Ill. 1989). Moreover, the court must "give effect to the intention of the parties" at the time they entered into the agreement. *LaSalle Nat'l Trust*, 76 F.3d at 144; *see In re Doyle*, 581 N.E.2d 669, 676 (Ill. 1991). The court may declare the meaning of an unambiguous contract as a matter of law. *N. Shore Gas Co. v. Salomon, Inc.*, 152 F.3d 642, 652 (7th Cir. 1998) (interpreting Illinois law); *LaSalle Nat'l Trust*, 76 F.3d at 144-45; *see Farm Credit Bank of St. Louis v. Whitlock*, 581 N.E.2d 664, 667 (Ill. 1991). If the terms of the contract are ambiguous, however, interpretation of the contract becomes a question to be determined by the trier of fact. *LaSalle Nat'l Trust*, 76 F.3d at 145; *see Farm Credit Bank of St. Louis*, 581 N.E.2d at 667.

The threshold question of whether or not a contract is ambiguous is a matter of law. *Kaplan v. Shure Bros.*, 266 F.3d 598, 604-05 (7th Cir. 2001) (interpreting Illinois law); *see Farm Credit Bank of St. Louis*, 581 N.E. 2d at 667. A court will not find ambiguity where the terms of a contract are clear. *Kaplan*, 266 F.3d at 605; *see In re Estate of Powless*, 734 N.E.2d 111, 116 (Ill. App. Ct. 2000). A court may, however, find ambiguity if the terms of a contract are "reasonably susceptible to different constructions." *Kaplan*, 266 F.3d at 605; *see Allied Asphalt Paving Co. v. Vill. of Hillside*, 731 N.E.2d 425, 429 (Ill. App. Ct. 2000); *Spectramed v. Gould*, 710 N.E.2d 1, 7 (Ill. App. Ct. 1998). Applying the above principles and limiting its evaluation to the four corners of the License Agreement, this Court finds the term *senyo shiyoken* renders the Agreement ambiguous.

In this case, the term *senyo-shiyoken* appears in the License Agreement in only one place:

> LICENSOR agrees to cause said exclusive license (Senyo-Shiyoken) to be registered at the Japanese Patent Office at the cost and expense of LICENSEE.

(License Agmt., para. I, at 2.) Within the four corners of the License Agreement, the parties failed to define *senyo-shiyoken*. Further, although the term *senyo-shiyoken* appears in the Basic Sale Agreement:

> [Sunstar] shall be solely responsible, at its own cost and expense, for registering the exclusive license (Senyo-Shiyoken) under the License Agreement with the Patent Office in Japan during the term of the Trust.

(Basic Sale Agmt. § 6.1, at 6) and in the Trust Agreement:

> [Sunstar] shall be solely responsible, at its own cost and expense, for registering the exclusive license (Senyo-Shiyoken) under the License Agreement with the Patent Office in Japan during the term of this Agreement. . . . Trustee shall execute and deposit in the Account with the Bank all such documents as reasonably requested of Trustee by AS in connection with the registrations of the assignment of the Trademark from [Sunstar] to Trustee and of [Sunstar's] exclusive license (Senyo-Shiyoken) under the License Agreement.

6

(Trust Agmt., para. 2, at 3), which agreements along with the License Agreement form the 1980 Agreements at issue in the instant dispute, the term appears only in context, without definition or indication as to the meaning assigned to it by the parties. This Court is unable to derive meaning merely from the term's use in context.

In an attempt to affix meaning to the term *senyo-shiyoken*, the parties point the Court to the Japanese Trademark Act and thrust upon the Court numerous expert reports, declarations, and deposition transcripts purporting to clarify the term's meaning. Yet, even the experts disagree on the scope of the rights granted by a *senyo-shiyoken* license under Japanese law, *i.e.*, whether the term conveys to a licensee the full range of use rights inherent in the registered trademarks under Japanese law or whether a licensee's rights are limited to exclusive use of specific, registered marks only. Clearly, then, the term is ambiguous and reasonably susceptible to different constructions. Therefore, the parties' intent as to the meaning of the term *senyo-shiyoken* as used in the License Agreement is an issue to be determined by the jury at trial.

For the foregoing reasons, Movants' Motion for Determination of Japanese Law is denied.

## II. Motion for Determination of Responsive Expert Report Dates and Exclusion of Law Expert Testimony from Trial.

By these motions, Movants request this Court to 1) exclude experts on Japanese trademark law from testifying before the jury; 2) allow Alberto and Bank One to submit expert reports in response to Sunstar's non-legal expert report of Keith Reams; and 3) set dates by which responsive expert reports are due.

A. <u>Motion to Exclude Law Expert Testimony From Trial.</u>

In their Motion to Exclude Law Expert Testimony from Trial, Movants request this Court to exclude experts on Japanese trademark law from testifying before the jury. For the following reasons, Movants' motion is denied.

Once the court has found a contract ambiguous, the parties may introduce extrinsic evidence in an attempt to clarify the true meaning of the contract. *Lumpkin v. Envirodyne Indus.*, 933 F.2d 449, 456 (7th Cir. 1991); *see Nerone v. Boehler*, 340 N.E.2d 534, 536-37 (Ill. App. Ct. 1976). If the extrinsic evidence in undisputed, "then the interpretation of the contract remains a question of law" for determination by the court. *Id.* If the extrinsic evidence is disputed, however, then that evidence is admissible to the fact finder, and the meaning of the contract becomes an issue for determination at trial. *LaSalle Nat'l Bank v. Gen. Mills Rest. Group*, 854 F.2d 1050, 1052 (7th Cir. 1988) (interpreting Illinois law); *see Nerone*, 340 N.E.2d at 536-37.

As discussed above, this Court finds that the term *senyo-shiyoken* renders the License Agreement ambiguous. Further, the parties' experts do not agree on the scope of the rights conveyed to a licensee by registration of a trademark with the JPO as a *senyo-shiyoken* license. Thus, the jury in this case may consider extrinsic evidence as to the scope of rights under Japanese law that a party may have intended to convey by inclusion of the term *senyo-shiyoken* in the License Agreement.

Movants argue that "the jury is not the appropriate body to determine issues of foreign law," therefore, this Court should bar experts in Japanese trademark law from testifying before the jury. Fed. R. Civ. P. 44.1; 1996 Advisory Committee Notes to Rule 44.1; *cf. Pittway Corp. v. U.S.*, 88 F.3d 501, 504 (7th Cir. 1996) (determining when a distribution is declared under governing French corporate law statute). By pursuing this line of argument, Movants overlook

the fact that the License Agreement does not overtly point toward a foreign statute, nor does it expressly incorporate Japanese law, but merely includes a foreign legal term in its text. Thus, the critical issue is not what Japanese law is or was, but rather what the parties intended to express when they used this japanese phrase in an English language License Agreement for use of a trademark in Japan. This is a question of fact; and, in this case, the question of fact involves inquiry into what the parties intended by including a Japanese legal term in their otherwise English language contract. This, therefore, is not a matter of determining substantive issues of foreign law – *i.e.* interpreting and applying a foreign statute – but is, rather, a matter of ascertaining the meaning assigned to a foreign legal term by the parties at the time they entered into a contract.

Fed. R. Evid. 702 allows expert testimony "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." Here, the rights inherent in a trademark registered as *senyo-shiyoken* under Japanese trademark law at the time the parties entered into the License Agreement is relevant to, but not determinative of, the parties' intent. Testimony by experts in Japanese trademark law will constitute but one piece of evidence as to what the parties may have intended by inclusion of the term *senyo-shiyoken* as a parenthetical to the phrase "exclusive license" in the License Agreement. Any reference to or interpretation of the Japanese Trademark Act by the experts, although clearly helpful to the jury in determining what the parties could reasonably have intended, is merely circumstantial evidence as to the bundle of use rights the parties may have intended to assume or convey at the time they incorporated the term into their agreement. Such testimony is in no way determinative of the substantive law governing this case -- the law of contracts under Illinois law – nor is it a prohibited expert opinion on ultimate issues of law. *See*

9

*Islamic Republic of Iran Broadcasting v. Sotheby Parkee Bernet, Inc.*, 839 F.2d 780, 782 (U.S. App. D.C. 1988) (upholding district court's decision to allow Iranian law expert describing general policies of property confiscation prevailing in Iran at time of act giving rise to property dispute); *Nieves-Villanueva v. Soto-Rivera*, 133 F.2d 92, 99 (1st Cir. 1997) (finding Puerto Rican law expert testimony as to normal personnel practices under Puerto Rican law unobjectionable). Moreover, testimony by Japanese legal experts likely will be necessary to assist the fact finder in understanding the different constructions available to the term *senyo-shiyoken* under Japanese trademark law at the time the parties entered into the License Agreement. Obviously, if either party claims to have intended a meaning that bears no relationship to any of the available constructions, then the trier of fact could reasonably conclude that such a meaning is unreasonable. On the other hand, however, a party claiming to have intended a package of use rights consistent with all of the different constructions available for the term *senyo shiyoken* will most likely be much more believable. The important distinction is that the trier of fact will not be asked nor permitted to determine substantive issues of foreign law. Rather, it will be for the trier of fact to determine the intent of the parties with the expert testimony as to the different available constructions of the foreign legal terminology being used solely to aid the trier of fact in determining the reasonableness of the positions of the parties as to their true intent. Once the intent of the parties is determined, then the jury can proceed to determine whether or not the various commercial acts violated, not the Japanese law of *senyo-shiyoken*, but the trademark use rights to which the parties agreed in their contract.

For the foregoing reasons, this Court denies Movants' Motion for Exclusion of Law Expert Testimony from Trial.

B. <u>Motion For Determination of Responsive Expert Report Dates.</u>

Upon review of the transcripts detailing the events surrounding the parties' filing of expert reports, this Court finds there was some confusion on behalf of the parties as to the cut-off dates for filing responsive reports. Therefore, with respect to Movants' Motion for Determination of Responsive Expert Report Dates, this Court sets the following dates by which responsive legal and non-legal expert reports and depositions are due:

1) Alberto and Bank One may submit expert reports in response to the non-legal expert report of Keith Reams within 14 days of this order;

2) non-legal experts must be deposed within 28 days of this order;

3) Alberto and Bank One may submit responsive Japanese law expert reports within 14 days of this order;

4) Japanese law experts must be deposed within 28 days of this order.

Failure to comply with this Order will result in this Court excluding Alberto and Bank One's responsive legal and non-legal expert testimony from trial. These dates are firm; no extensions will be granted.

## CONCLUSION

For the foregoing reasons, the Court denies Movants' Motion for Determination of Japanese Law [#61-1] and grants in part and denies in part Movants' Motion for Determination of Responsive Expert Report Dates and Exclusion of Law Expert Testimony from Trial [#62-1].

**So Ordered.**                                                                 **Entered:** _____
                                                                                Ronald A. Guzman

                                                                                **United States Judge**

**Dated:   September 29, 2003**

G:\Mary\albertojapanese

12