# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SUNSTAR, INC, )
)
   Plaintiff, )
)
   v. )
)    No. 01 C 736
ALBERTO-CULVER COMPANY, )
INC. and BANK ONE CORPORATION )
f/k/a FIRST NATIONAL BANK OF )   Judge Ronald A. Guzmán
CHICAGO, )
)
   Defendants. )
_____)
)
ALBERTO-CULVER COMPANY, a )
Delaware Corporation, )
)
   Plaintiff, )
)
   v. )    No. 01 C 5825
)
SUNSTAR, INC., a Japanese )   Judge Ronald A. Guzmán
Corporation, SUNSTAR GROUP )
COMPANY (f/k/a Alberto-Sunstar Co., )
Ltd.), a Japanese Corporation, KANEDA,)
KASAN, KABUSHIKI KAISHA, a )
Japanese Corporation, and BANK ONE, )
NATIONAL ASSOCIATION, as Trustee )
under Trust Agreement No. 22-81196, )
dated February 27, 1980, a National )
Banking Association, )
)
   Defendants. )
_____)

## MEMORANDUM OPINION AND ORDER

These consolidated cases arise from a dispute between Sunstar, Alberto-Culver ("Alberto") and Bank One over Sunstar's use of a modified trademark ("the 1999 modified mark") in Japan. Each of the parties filed multiple motions in limine, which the Court referred to Magistrate Judge Nolan. In an Order issued August 23, 2004 ("Order"), Judge Nolan granted the motions in part and denied them in part. The parties have filed objections to the Order, which we will modify or set aside only if it is "clearly erroneous or contrary to law." FED. R. CIV. P. 72(a). For the reasons set forth below, the parties' objections to Judge Nolan's rulings on Sunstar's motions to exclude evidence relating to the 1988 dispute and 1989 settlement are sustained in part and overruled in part. In all other respects, the parties' objections are overruled.

### Discussion[1]

Alberto objects to the Magistrate Judge's decisions on: (1) its motions in limine nos. 3, 4, 5, 6, 7a, e, f and j; and (2) Sunstar's motions in limine to exclude evidence relating to the 1988 dispute and 1989 settlement between Sunstar and Alberto.

Sunstar objects to her decisions on: (1) its motions in limine to exclude evidence relating to the 1988 dispute and 1989 settlement, to limit Bank One and Alberto to a single expert witness on Japanese law and to bar Alberto's expert, David Guttman, from testifying; (2) Alberto's motions in limine nos. 1, 2, 7b, c, d, g, i and 8; and (3) Bank One's motions in limine nos. 1-5.

---

[1] The facts of the case have previously been described in opinions by Judge Lindberg, Magistrate Judge Nolan and this Court and will not be repeated here.

Bank One objects to Judge Nolan's decisions on: (1) Sunstar's motions concerning evidence about the 1988 dispute and 1989 settlement and to limit Bank One and Alberto to one expert witness on Japanese law; (2) Bank One's sixth motion in limine concerning Japanese law; and (3) Alberto's motions in limine nos. 4, 6 and 7f.

## Alberto's Motion in Limine No. 3

In its third motion in limine, Alberto asked the Magistrate Judge to exclude from the trial any evidence of, or argument about, Sunstar's unexpressed intent regarding the term senyo-shiyoken. In its response, Sunstar said Alberto's motion was unfounded because Sunstar intended to present evidence of intent that it communicated to Alberto, not evidence of unexpressed intent. (*See* Sunstar's Mem. Law Opp'n Alberto's Motion in Limine No. 3 at 4-10.) Given Sunstar's representation that it would not introduce evidence of unexpressed intent, the Magistrate Judge denied Alberto's motion without prejudice. (*See* Order at 10-11.) There is nothing erroneous about the Magistrate's Judge's refusal to issue an opinion on a dispute that is not yet ripe.

## Alberto's Motion in Limine No. 4

Alberto's fourth motion in limine seeks to exclude from the trial any evidence or argument relating to agreements that pre-date the 1980 agreements on which this suit is based. Alberto argued that: (1) the prior agreements are irrelevant to the senyo-shiyoken issue because they do not define the term; (2) by offering such evidence, Sunstar is, in effect, arguing that it has ownership rights in the trademarks, a position that Article II of the license agreement contradicts; (3) the license agreement contains an integration clause, which precludes admission of the prior agreements; (4)

3

Bank One was not a party to the pre-1980 agreements, and thus, they are not probative of all parties' intent; and (5) such evidence, if offered to show that the Bank's decision to suspend the license was unjustified, is irrelevant. Magistrate Judge Nolan granted the motion as to the last ground but in all other respects denied it.

Once again, we find no error in Judge Nolan's decision. Under Illinois law, preliminary negotiations and prior agreements may be consulted to resolve a contractual ambiguity. *See Mayol v. Weiner Cos., Ltd.*, 425 N.E.2d 45, 47 (Ill. App. Ct. 1981) ("'In general, the intention of the parties is to be determined from the final agreement executed by them, rather than from preliminary negotiations and agreements but previous agreements, negotiations and circumstances may be considered in determining the meaning of specific words and clauses.'") (quoting *Martindell v. Lake Shore Nat'l Bank*, 15 Ill. 2d 272, 283-84 (Ill. 1959)) (internal citations omitted). The fact that the pre-1980 agreements do not explicitly define senyo-shiyoken does not mean that those agreements, and the parties' discussions about them, will shed no light on what they intended the term to mean in the 1980 license agreement.

Judge Nolan's rejection of Alberto's second ground for its motion is equally sound. If Article II of the license agreement conclusively establishes that the parties did not intend the use of the term senyo-shiyoken to grant Sunstar the right to modify any trademark, Alberto should have filed a summary judgment motion on that basis. Alberto cannot, however, seek a judgment in its favor on this suit in the guise of a motion in limine.

The third and fourth grounds urged by Alberto are also without merit. The fact that the license agreement has an integration clause does not preclude the use of extrinsic evidence to clarify the term senyo-shiyoken. *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 608 (7th Cir. 1993) (stating

4

that extrinsic evidence can be used "to clarify the meaning of an ambiguous text" in a contract with an integration clause). Moreover, the fact that Bank One was not a party to the pre-1980 agreements does not mean that it was ignorant of them and the negotiations that produced them. Absent unrefuted evidence that the Bank's understanding of senyo-shiyoken was not colored in any way by the pre-1980 negotiations and agreements, and Alberto provided none, the Magistrate Judge had no basis for granting Alberto's motion.

### Alberto's Motion in Limine No. 5

In motion no. 5, Alberto seeks to bar Sunstar from presenting evidence and argument in support of its fifth affirmative defense, that Alberto is estopped from arguing that Sunstar's use of the 1999 modified mark lessens the value of Alberto's trademarks. The Magistrate Judge thought this issue should have been addressed in a summary judgment motion. Thus, she denied the motion in limine.

Alberto says the motion is appropriately brought pursuant to Federal Rule of Civil Procedure 16, which permits the Court to eliminate frivolous defenses in pre-trial conference proceedings. *See* FED. R. CIV. P. 16(c)(1). The Court agrees that Alberto was not required to raise this issue in a summary judgment motion. But, given the fact that Rule 16 does not require the Court to strike deficient defenses at the pre-trial conference stage, it would have been more prudent for Alberto to do so. In any event, though we disagree with the letter of Judge Nolan's decision on this issue, we agree whole-heartedly with its spirit: the briefing of this case must come to a close. Thus, the Court exercises its discretion under Rule 16 not to entertain this motion directed toward eliminating a purportedly frivolous defense.

5

## Alberto's Motion in Limine No. 6

Alberto's motion no. 6 is, in reality, a motion to reconsider this Court's September 23, 2003 ruling that experts in Japanese law may testify about the meaning of senyo-shiyoken. Alberto's motion contains no basis for reconsidering that decision. Therefore, the Magistrate Judge's refusal to do so was not erroneous.

## Alberto's Motion in Limine No. 7a

In this motion, Alberto seeks to bar Sunstar from arguing that economic circumstances compelled it to use the 1999 modified mark. Having granted Alberto's motion in limine no. 2, which sought exclusion of the same evidence on different grounds, Judge Nolan denied this motion as moot. Without any explanation or discussion, Alberto asserts that the denial "was contrary to law." (*See* Alberto's Rule 72 Objections at 24.) The Court is at a loss to understand Alberto's objection, which is, therefore, overruled.

## Alberto's Motion in Limine No. 7e

This motion seeks to prevent Sunstar from impeaching Alberto's witnesses with evidence that Alberto's actions are a pretext for it to re-enter the Japanese market. Alberto argues that such evidence is inconsistent with Judge Lindberg's summary judgment order, which states:

> Sunstar claims Alberto's claimed good faith is a fact issue, that a fact-finder can reasonably infer from the evidence that Alberto was not in fact acting to protect a contingent interest in the Trademarks but rather was raising a supposed concern about the Trademarks as a pretext for its real interest of engineering a return to the Japanese market that it gave up 22 years ago. However, this seems conjecture, and does not rise to the level of evidence on which a reasonable jury could find for [Sunstar].

6

(*See* 11/6/02 Mem. Op. & Order at 13.) Judge Lindberg's statement, however, was made in the context of Sunstar's claim that Alberto had induced Bank One to breach its fiduciary duties to Sunstar. In other words, Judge Lindberg held that Sunstar's pretext evidence was not strong enough to negate Alberto's conditional privilege defense to that claim. He did not address, let alone hold, that evidence of Alberto's alleged desire to return to the Japanese market, to the extent there is any, could not be used to attack the credibility of Alberto's witnesses. Consequently, we will not disturb Judge Nolan's ruling that Sunstar may use such evidence for impeachment.

### Alberto's Motion in Limine No. 7f

In motion 7f, Alberto seeks to prevent Sunstar from presenting evidence or argument that Section 9.3 of the Basic Sales Agreement corroborates its position that the parties, by using the term senyo-shiyoken, intended to allow Sunstar to use the 1999 modified mark. Section 9.3 says:

> [Sunstar] shall not, except for the purpose of defending the Trademarks in Japan, register any new trademarks containing the names Alberto, Alberto VO5 or VO5 or any of the names or marks set forth in Appendices I or II, or any variation of any of the foregoing, in Japan and [Sunstar] shall not attempt to use of register any of the Trademarks anywhere else in the world, except with the written consent of Alberto.

(Order at 27-28 (quoting Section 9.3 of the Basic Sales Agreement).) Sunstar says the language of that section, which forbids Sunstar from using or registering Alberto's trademarks outside of Japan but only forbids registration in Japan, is consistent with its understanding of senyo-shiyoken.

In Alberto's view, that argument conflicts with Judge Lindberg's order granting it summary judgment on Count V of Sunstar's complaint, which sought a declaration that Section 9.3 permitted it to "freely *use* 'any variation' of the Japanese VO5 Trademarks in Japan." (Am. Compl. ¶ 56) (emphasis in original). In relevant part, Judge Lindberg said:

> The scope of the grant allows Sunstar . . . to use only the specific VO5 Marks identified in the Appendices. The absence of an express "negative covenant" in the License barring Sunstar from using other marks does not expand this grant to modified versions of the Licensed Trademarks. The license is a limited grant of authority to use the trademarks in a defined way. Another use is not authorized by the grant and is a breach. Sunstar's interpretation would render meaningless all references to the "Licensed Trademarks" and the specific identification of the 13 Licensed VO5 Marks in the License.

(11/6/02 Mem. Op. & Order at 15) (citations omitted).

The breadth of that language suggests that Judge Lindberg decided the ultimate issue in the case: that the 1980 agreements prohibit Sunstar from using anything but the specifically identified marks. It is clear from the rest of the opinion, however, that he did no such thing. The decision that Judge Lindberg rendered after the quoted passage is that Alberto was entitled to judgment on Sunstar's claim that Section 9.3 of the BSA allowed it to modify the marks in any way it chose. He did not hold that Section 9.3 precluded Sunstar from using any modifications whatsoever. That much is made clear by his ruling on the remaining claim in this suit that an issue of fact exists as to whether the parties, by including senyo-shiyoken in the license, intended for it to convey "the full range of use-rights inherent in the listed trademark registrations . . . or [use of] the specific marks only." (*Id.* at 10.) If Judge Lindberg had decided that the BSA, which is incorporated in the license agreement, prohibited Sunstar from using anything but the identified marks, then there would be no fact issue as to the meaning of senyo-shiyoken.

In short, Judge Lindberg's ruling on Sunstar's Count V does not preclude Sunstar from arguing that the license agreement allows it to use certain variations, consistent with a senyo-shiyoken license, but not any variation of its choosing. Consequently, as the Magistrate Judge ruled,

8

it also does not preclude Sunstar from arguing that the language of Section 9.3 of the BSA corroborates its position on the meaning of senyo-shiyoken.

## Alberto's Motion in Limine No. 7j

In total, Alberto's objection to the Magistrate Judge's ruling on motion 7j states: "Alberto objects to the denial of AC MIL 7(j), which sought to bar evidence relating to non-Japanese trademarks, *see* Mem. Op. (8/20/2004) at 30 (Add. Ex. 8), as contrary to law." (Alberto's Rule 72 Objections at 24.) Because we cannot discern from this terse statement the basis for Alberto's objection, it is overruled.

## Sunstar's Motions to Exclude Evidence Related to the 1988 Dispute and 1989 Settlement

Sunstar moved to bar Alberto from offering evidence relating to Sunstar and Alberto's 1989 settlement of a dispute over Sunstar's use of another modified mark (the "1989 modified mark") to prove that Sunstar understood that the license prohibited it from using any variations of the trademarks. Sunstar argued that such evidence was barred by Federal Rules of Evidence ("Rule") 408, 401 and 403. Judge Nolan assumed that Rule 408 applied to that evidence. (*See* Order at 40-46.) She held, however, that: (1) the parties had not actually attempted to settle the dispute until September 7, 1988, and thus, evidence before that date fell outside the Rule (*id.* at 42); (2) post-September 6, 1988 evidence would be admissible under Rule 408 to show that Sunstar did not make the arguments it now offers during the 1988 negotiations (*id.* at 44-45); but (3) such evidence was inadmissible under Rule 403 because it was cumulative of pre-September 7, 1988 evidence, and thus, its limited value was outweighed by the potential prejudice to Sunstar (*id.* at 45-46).

9

Sunstar also moved under Rules 408, 401, 402 and 403, to bar Alberto from using the 1989 settlement agreement as a basis for its reasonable royalty calculations. In that section of the Order, the Magistrate Judge held that Alberto's use of the 1989 evidence was not barred by Rule 408 because it pertained to the settlement of a different dispute. (*Id.* at 55-56.) She also held that the evidence was not barred by Rule 403 because its probative value was not substantially outweighed by the potential prejudice to Sunstar. (*Id.* at 57-60.)

Sunstar contends that the two rulings are inconsistent. The Court agrees. Rule 408 forbids the use of settlement evidence to prove the validity or value of the claim in suit. *See* FED. R. EVID. 408. Those are precisely the purposes for which Alberto offers it: to cast doubt on Sunstar's interpretation of senyo-shiyoken and to support its royalty request. Thus, if evidence pertaining to the settlement of the 1988 dispute falls within the purview of Rule 408, Alberto can use it for neither purpose.

"In deciding whether Rule 408 should be applied to exclude evidence, courts must consider the spirit and purpose of the rule and decide whether the need for the settlement evidence outweighs the potentially chilling effect on future settlement negotiations." *Zurich Amer. Ins. Co. v. Watts Indus., Inc.*, Nos. 03-3851 & 03-3853, __ F.3d __, 2005 WL 1804771, at *6 (7th Cir. Aug. 2, 2005). That balance, our court of appeals has said, "is especially likely to tip in favor of admitting evidence when the settlement communications at issue arise out of a dispute distinct from the one for which the evidence is being offered." *Id.*

Sunstar says the policy underlying Rule 408, to encourage settlements, militates in favor of barring the evidence from this case. Though this case and the prior dispute involve different alleged acts of trademark infringement, both arise out of the parties' 1980 agreements. Parties to such long-

10

term contracts, Sunstar says, would be very reluctant to settle their disputes if their concessions would be admissible in subsequent litigation arising from the same contract.

The Court disagrees. A long-term business relationship exists only if it is beneficial for all parties involved. The parties' economic interest in preserving that relationship far outweighs their risk of being confronted with a settlement agreement in future litigation. Consequently, parties to long-standing relationships have a much greater incentive than most other litigants to settle their disputes amicably, even if those settlements may later be used against them in court.

Moreover, though Sunstar's position in the prior dispute is different from the one it takes here, the arguments it made, or failed to make, in the earlier dispute are still probative of the scope of the 1980 license. Because evidence relating to the 1989 settlement has considerable probative value, and admitting it at trial is not likely to chill future settlements, the Court holds that Rule 408 does not bar Alberto from using it to prove the amount or validity of its claim. *See Zurich Amer. Ins. Co.*, 2005 WL 1804771, at *6 (collecting cases from federal courts of appeal stating that Rule 408 does not bar admission of evidence pertaining to settlement of claims other than the one being litigated).

Rule 403 is also no bar. That Rule permits the Court to exclude relevant evidence if, among other reasons, "its probative value is substantially outweighed by the danger of unfair prejudice." FED. R. EVID. 403. In this context, "unfair prejudice" means "the likelihood that the evidence will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *Crawford v. Edmonson*, 764 F.2d 479, 484 (7th Cir. 1985) (quotation omitted). In Sunstar's view, telling the jury that it voluntarily settled a previous trademark dispute may lead the jury simply to assume that it infringed in this instance.

11

Once again, the Court disagrees. Sunstar's position in this case is quite different from the one it took in 1989. In the earlier dispute, Sunstar argued that its use of the 1989 modified mark did not infringe because it was "totally different from any of the Licensed Trademarks." (*See* Alberto's Rule 72 Objections, Ex. 1, 7/27/88 Letter to Saunders from Norisugi at 3.) In this dispute, on the other hand, Sunstar argues that it does not infringe because the 1999 modified mark is so similar to the licensed marks that it is encompassed within the senyo-shiyoken license. Because the grounds for the two disputes are different, Sunstar's settlement of the 1988 dispute should not give rise to an inference of liability in this case. Moreover, any danger that the jury may draw such an inference can be eliminated with an appropriate limiting instruction.

Even if the 1989 agreement would otherwise be admissible, Sunstar says that it cannot be the basis for Alberto's reasonable royalty calculation because the agreement is not probative of a reasonable royalty. Such a royalty, Sunstar says, is one that is reached during an arms-length negotiation, not one coerced under the threat of litigation. Alberto says that the conditions under which a license was obtained go to the weight of the evidence, not its admissibility. The Magistrate Judge agreed with Alberto.

The general rule, as Sunstar notes, is that license fees negotiated under the threat of litigation are not probative of a reasonable royalty because such fees "may be strongly influenced by a desire to avoid full litigation." *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078-79 (Fed. Cir. 1983) (internal quotation and citation omitted); *see Deere & Co. v. Int'l Harvester Co.*, 710 F.2d 1551, 1557 (Fed. Cir. 1983) (stating that the district court "properly discount[ed] the probative value" of a license "negotiated against a backdrop of continuing litigation and . . . infringement" in determining a reasonable royalty). If, however, the licensee was not motivated by a desire to end or

12

avert litigation, a settlement license may be probative of a reasonable royalty. *See, e.g., Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1577 (Fed. Cir. 1995) (J. Nies, dissenting in part) (stating that the "[general] rule does not apply where . . . validity and infringement . . . have been settled in the licensor's favor when the license was entered"); *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1572 (Fed. Cir. 1988) (admitting evidence of a license agreement executed after liability for infringement was established); *B&H Mfg., Inc. v. Foster-Forbes Glass Co.*, Civ. No. F91-262, 1993 WL 141120, at *6-7 (N.D. Ind. Jan. 6, 1993) (admitting license agreement in settlement between patent holder and one of its chief rivals because it was not executed until after trial).

It is clear from the documents surrounding the 1989 settlement that the threat of litigation was a significant factor in Sunstar's decision to enter into the license. (*See, e.g.,* Bank One's App. Supp. Mot. Summ. J., Vol. II, Ex. 40, 8/10/88 Letter to Sunstar from Trustee ("Unless you cease the use of [the 1989 modified mark] within one month after receipt hereof, Licensor, in addition to any other remedy available to it, shall forthwith suspend your right to use such License Trademarks as provided in the License Agreement."); Alberto's Rule 72 Objections, Ex. 3, 9/7/88 Letter to Solberg from Masuda ("While it is one alternative to refer the dispute to judgment by court, the top executives of Sunstar Inc. prefer solving the subject issue in a businessmanlike manner, if feasible, to maintain [a] good relationship with your esteemed company."); Bank One's App. Supp. Mot. Summ. J., Vol. II, Ex. 21, 2/8/89 Letter to Lavin from Kaneda at 3 ("I trust it is quite opportune and significant that by a copy of this letter you and ourselves inform the Trustee of our mutual understanding that the [1989 modified mark is] being added to the existing agreements and the Trustee does not now have any basis to seek any action under the License Agreement . . . .")

Moreover, the same factor that makes the settlement documents admissible under Rule 408 – the parties' long-standing business relationship – vitiates their value in establishing a reasonable royalty. As the settlement documents attest, Sunstar's desire to preserve its relationship with Alberto weighed heavily in its decision to settle the dispute. (*See, e.g.,* Alberto's Rule 72 Objections, Ex. 3, 9/7/88 Letter to Solberg from Masuda (stating that Sunstar wanted to resolve the dispute amicably "to maintain [a] good relationship with [Alberto]."); Bank One's App. Supp. Mot. Summ. J., Vol. II, Ex. 21, 2/8/89 Letter to Lavin from Kaneda at 1 (stating that the parties had "a difference of opinion[]" with respect to the application of the 1980 agreements to the 1989 modified mark and that they had "meaningful . . . discussions with the view to establishing a renewed relationship of cooperation, such discussions having been conducted in the spirit of friendship and mutual respect, which spirit . . . has been manifested in the successful collaboration between the two companies and an ongoing business relationship."); Exs. Supp. Sunstar's Opp'n Bank One's Mot. Summ. J., Ex. 1, 1989 License and Know-How Agreement at 2 ("The parties hereto desire to establish a long term relationship of mutual international cooperation through strengthening the existing friendly relationship between the parties and by facilitating a closer mutual cooperation.").) Given Sunstar's stated goal of maintaining a good relationship with Alberto, the royalty rate to which it agreed in the 1989 settlement is "not an accurate gauge of a reasonable royalty." *Rite-Hite Corp.,* 56 F.3d at 1577 (J. Nies, dissenting in part) (internal quotation and citation omitted). Consequently, Alberto cannot use the 1989 royalty rate as a basis for its reasonable royalty calculation.

## Sunstar's Motions to Limit Bank One & Alberto's Expert Testimony

Sunstar also asked Judge Nolan to limit Bank One and Alberto, together, to a single expert witness on Japanese law and to strike Bank One's proffered legal expert, David Guttman. The Magistrate Judge ruled that, in keeping with Local Rule 16.1, Bank One and Alberto would be limited to one expert witness on each subject. Thus, they would be permitted to offer more than one expert on Japanese law only if each expert addressed a different subject of Japanese law at issue in the case. In light of that ruling, Judge Nolan deemed premature Sunstar's motion to strike Guttman, as it was not clear that he would testify at all or what he would testify about. Sunstar contends that both rulings were wrong because there is only one subject of Japanese law, the meaning of senyo-shiyoken, at issue in this case, and Bank One has not withdrawn Guttman as a witness.

Alberto, of course, disagrees. It contends that resolution of the senyo-shiyoken issue will require testimony about different articles of the Japanese Trademark Act and the tenets of Japanese statutory construction, which are different subjects that must be addressed by different experts.

If the expertise of Alberto and Bank One's proffered witnesses is, indeed, as narrow as Alberto says, then each may testify about his area of expertise. Alberto and Bank One may not, however, offer three different witnesses on three different subjects, if one witness is qualified to opine on all three. Because that is the essence of Judge Nolan's ruling, we see no error in it.

Given the resolution of the foregoing issue, we also agree that Sunstar's motion to bar Guttman from testifying is premature. If, after digesting the Court's rulings on these motions, Alberto and Bank One still wish to offer Guttman as a witness, and Sunstar still views his testimony as objectionable, Sunstar may renew its motion.

15

**Sunstar's Objections to the Rulings on the Reasonableness of the License Suspension**

Sunstar also objects to the Magistrate Judge's rulings on Alberto's motions in limine nos. 1, 7b, d and i and Bank One's motions in limine nos. 1-3, that evidence and argument relating to the reasonableness of Bank One's suspension of Sunstar's license and its alleged bias in favor of Alberto are irrelevant. Judge Nolan granted those motions because the claims to which that evidence pertains – Sunstar's breach of contract and breach of fiduciary duty claims against Bank One and its inducement of breach of fiduciary duty claim against Alberto – are no longer at issue in the case. Though Judge Lindberg granted summary judgment for Alberto and Bank One on those claims, he did not explicitly say that Bank One acted reasonably in suspending the license. Thus, Sunstar contends, it may argue that the suspension was unreasonable, and thus, not effective under the license agreement, to counter Alberto's claim for post-suspension damages.

Once again, the Court agrees with the Magistrate Judge. As Judge Nolan explained in the Order, though Judge Lindberg did not use the phrase "Bank One acted reasonably," he did, in fact, make that ruling. (*See* Order at 4-6.) Judge Lindberg's rulings that Bank One used reasonable care and caution in selecting outside counsel to advise it with respect to the license suspension and that it actually relied on that advice in making the suspension decision is tantamount to ruling that the Bank acted reasonably in suspending the license. Thus, Sunstar's objections are overruled.

**Sunstar's Objections to the Exclusion of its Reasons for Adopting the 1999 Modified Mark**

Sunstar also takes issue with Judge Nolan's rulings on Alberto's motion in limine no. 2 and Bank One's motion in limine no. 5 that it may not present evidence or argument about its reasons for adopting the 1999 modified mark. Sunstar says that such evidence is relevant to the intent factor

of the likelihood of confusion test. *See, e.g., Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461-62 (7th Cir. 2000) (setting forth the seven-factor test for likelihood of confusion). As the Magistrate Judge correctly noted, however, bad intent is relevant to the issue of confusion, but an alleged infringer's good intent is not. (*See* Order at 8-9 & authority cited therein.) Thus, she correctly decided to exclude evidence of Sunstar's reasons for using the 1999 modified mark.

## Sunstar's Objections to the Exclusion of Evidence on Compliance with Use Requirements

Judge Nolan also granted Alberto's motions in limine nos. 7c and g to exclude evidence and argument that Sunstar has complied with its license obligation to use the trademarks continuously because it complied with the use requirement imposed by Japanese law. In Judge Nolan's view, Sunstar's attempts to equate the contractual use requirement with that of Japanese law conflicted with Judge Lindberg's summary judgment order. (*See* Order at 24-25, 29.) Sunstar says Judge Lindberg did not rule that the two use requirements were distinct, and thus, Judge Nolan's decisions should be overturned.

The Court disagrees. Though Judge Lindberg did not explicitly say that the use requirements were different, that ruling is implicit in his opinion. Judge Lindberg referred to the contractual undertaking as a continuous use obligation and the Japanese legal obligation as a statutory use requirement. (*See* 11/6/02 Mem. Op. & Order at 5.) He then said: "It is a factual issue in dispute as to whether Sunstar has complied with the obligation to keep the Licensed VO5 Mark in continuous use." (*Id.*)

The language of the trust agreement demonstrates that Judge Lindberg's choice of words was intentional. In relevant part, that agreement provides:

> [Sunstar] shall be solely responsible, at its own cost and expense, for maintaining in full force and effect during the term of this Trust Agreement the registration in Japan of each of the trademarks in the name and on behalf of the Trustee, and in connection therewith, shall file and obtain the renewal of each of the Trademarks within the statutory term provided for the successive renewals thereof, and shall keep each of the Trademarks in continuous use and in a manner and quantity sufficient to meet the statutory requirements as to use and to maintain such registration . . . . Every three years during the term of this Trust Agreement, [Sunstar] shall certify to Trustee that each of the Trademarks has been in continuous use and in a manner and quantity sufficient to meet the statutory requirements as to use under Japanese law.

(*See* Am. Compl., Ex. 2, Trust Agreement ¶ 3.) The plain language of that section requires Sunstar to do two separate things: (1) "[to] keep each of the Trademarks in continuous use"; and (2) to use the marks "in a manner and quantity sufficient to meet the statutory requirements as to use under Japanese law." (*Id.*) In light of this language, we agree with Judge Nolan that Judge Lindberg's ruling necessarily implies that the trust agreement's use obligation is distinct from the use obligation imposed by Japanese law. Consequently, Judge Nolan correctly barred Sunstar from arguing that the two obligations are the same.

## Sunstar's Objections to the Exclusion of Evidence Regarding the "Naked" License Defense

Finally, Sunstar challenges the Magistrate Judge's rulings on Alberto's motion in limine no. 8 and Bank One's motion in limine no. 4, barring Sunstar from arguing that they abandoned the trademarks by giving it a "naked" license (*i.e.*, a license in which the licensor does not retain any control over the quality of the products offered by the licensee). Alberto says the naked license defense is barred by the doctrine of licensee estoppel, which prohibits licensees from denying the validity of the licensor's trademark rights during the term of the license. Sunstar says Judge

18

Lindberg rejected the licensee estoppel argument and that Magistrate Judge Nolan's ruling to the contrary must be rejected.

The Court disagrees. As Judge Nolan noted, there is not a single reference in Judge Lindberg's summary judgment opinion to licensee estoppel. Like the Magistrate Judge, we decline to infer from that silence that Judge Lindberg rejected the argument, when it appears that he simply did not address it.

The Magistrate Judge's ruling fills the gap. Her conclusion that Sunstar's naked license defense is barred as a matter of law is correct. (*See* Order at 33 & cases cited therein.) Accordingly, Sunstar's objections to her rulings are overruled.


**Bank One's Objections to the Denial of its Sixth Motion in Limine**

Most of Bank One's objections are addressed above. The one issue that we have not addressed, however, is Bank One's objection to its motion in limine no. 6 seeking to bar Sunstar from offering evidence or argument that its interpretation of senyo-shiyoken is supported by certain Japanese statutes and case law. As the Magistrate Judge ruled, this motion is, in essence, a request for reconsideration of the Court's denial of Bank One's motion for a determination of Japanese law. Because Bank One has offered no basis for reconsidering that decision, Judge Nolan rightly refused to do so.

19

## Conclusion

For the reasons set forth above, the parties' objections to Magistrate Judge Nolan's rulings on Sunstar's motions to exclude evidence related to the 1988 dispute and the 1989 settlement are sustained in part and overruled in part. Judge Nolan's rulings on those motions are modified as set forth above. In all other respects, the parties' objections are overruled.

**SO ORDERED.**                    **ENTERED:** 9/19/05

HON. RONALD A. GUZMAN
United States District Judge